UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Jane Doe | |
|     Plaintiff, | |
| v. | Docket No. |
| SAU #54, the Rochester School District, Kyle Repucci, Superintendent, Michael Hopkins, Superintendent, Justin Roy, Principal, Spaulding High School, Adam Houghton, Principal, Rochester Middle School, Ryan Gilpatrick, Principal, Rochester Middle School, Michelle Halligan-Foley, Rochester High School, and Lisa Kumph Rochester High School | JURY TRIAL REQUESTED |
|     Defendants. | |

## I.  Introduction

Plaintiff Jane Doe, formerly a student at Rochester Middle School and Spaulding High School, was sexually assaulted by two male peers in a locked bathroom during a basketball game being hosted in the school's gymnasium. The incident was promptly reported to school and law enforcement authorities, the assaults were investigated, and findings of "true" were made against the perpetrators.

The assaults took a heavy emotional toll on Ms. Doe's emotional state. She entered counseling shortly after the assaults and has continued to receive appropriate mental health counseling as she has grown and attempted to address the consequences of the assaults. Despite the best efforts of Ms. Doe, her family, and her counselor, she has at times suffered

from suicidal ideation and self-harm. On at least two occasions she has been admitted to hospitals for her own protection due to concerns about suicide ideation and self-harm.

Defendants were aware Ms. Doe was struggling in the aftermath of the assaults. Indeed, they voluntarily paid for her counseling sessions with an off-campus counselor who had no connection to the schools. Despite this knowledge, the defendants acted with deliberate indifference to Ms. Doe's educational needs and ultimately denied her access to academic programming Ms. Doe desired to participate in. This denial of access and participation was caused by the sexual assaults that occurred in 2017 on the Defendants' premises.

## II. Parties

1. The plaintiff, Jane Doe, is a twenty-year-old resident of the City of Rochester. Doe attended Rochester Middle School and Spaulding High School, both public schools run by the Rochester School District ("RSD").

2. The defendant Rochester School District is a public school district organized under the laws of the State of New Hampshire and is a political subdivision of the State of New Hampshire located in Rochester, New Hampshire. RSD is a recipient of federal funds and is responsible for complying with Title IX. Further, as a public school district, RSD owed a duty of reasonable supervision to each of its students, including Ms. Doe.

3. The defendant School Administrative Unit #54 (hereinafter "SAU #54") is a school administrative unit organized under the laws of the State of New Hampshire and is a governmental subdivision of the State of New Hampshire. It is comprised of one school district, RSD. SAU #54 is responsible for providing public education to all children residing within its boundaries. As a school administrative unit, SAU #54 owes a duty of reasonable

supervision to each of the students within its district, including Ms. Doe. SAU #54 is also a recipient of federal funds and is responsible for complying with all aspects of Title IX. SAU #54 is being sued both directly and based on a claim of *respondeat superior* and/or vicarious liability for the unlawful conduct of, Superintendent of RSD, Kyle Repucci, Principal of Spaulding High School, Justin Roy, and Principals of Rochester Middle School, Adam Houghton, Ryan Gilpatrick, Michelle Halligan-Foley, and Lisa Kumph.

4. The defendant Michael Hopkins was the Superintendent of Rochester School District SAU #54 and, at all relevant times, was employed by Rochester School District and SAU #54. As an administrator of these entities Superintendent Roy had a duty to execute all School Board policies and to oversee the observance of all School Board policies by all persons employed by RSD. As a result, Superintendent Roy had an obligation to ensure that all students attending RSD and SAU #54 schools, including Ms. Doe were being educated in an environment that complied with Title IX. Superintendent Roy also owed a duty of reasonable supervision to all students, including Ms. Doe. Superintendent Roy is being sued in his individual and official capacity.

5. The defendant Kyle Repucci was the Superintendent of Rochester School District SAU #54 and, at all relevant times, was employed by Rochester School District and SAU #54. As an administrator of these entities Superintendent Repucci had a duty to execute all School Board policies and to oversee the observance of all School Board policies by all persons employed by RSD. As a result, Superintendent Repucci had an obligation to ensure that all students attending RSD and SAU #54 schools, including Ms. Doe were being educated in an environment that complies with Title IX. Superintendent Repucci also owes a

3

duty of reasonable supervision to all students, including Ms. Doe. Superintendent Repucci is being sued in his individual and official capacity.

6. The Defendant, Justin Roy is the Principal of Spaulding High School and, at all relevant times, was employed by RSD and SAU #54. As an administrator at Spaulding High School, Principal Roy has a duty to oversee, supervise, and facilitate the daily operations of the school. Principal Roy also owes a duty of reasonable supervision to all students, including Ms. Doe. Additionally, at all relevant times, Principal Roy had an obligation to take reasonable steps to ensure that all students attending Spaulding High School, including Ms. Doe, were being educated in an environment that was in compliance with Title IX. Principal Roy is being sued in his individual and official capacity.

7. The Defendant, Adam Houghton was the Principal of the Rochester Middle School and, at all relevant times, was employed by RSD and SAU #54. As an administrator at Rochester Middle School, he had a duty to oversee, supervise, and facilitate the daily operations of the school. Houghton also owed a duty of reasonable supervision to all students, including Ms. Doe. Additionally, at all relevant times, Principal Houghton had an obligation to take reasonable steps to ensure that all students attending Rochester Middle School, including Ms. Doe, were being educated in an environment that complied with Title IX. Principal Houghton is being sued in his individual and official capacity.

8. Defendant, Ryan Gilpatrick is the Principal of the Rochester Middle School and, at all relevant times, was employed by RSD and SAU #54. As an administrator at Rochester Middle School, he had a duty to oversee, supervise, and facilitate the daily operations of the school. Gilpatrick also owed a duty of reasonable supervision to all students, including Ms. Doe. Additionally, at all relevant times, Principal Gilpatrick had an

obligation to take reasonable steps to ensure that all students attending Rochester Middle School, including Ms. Doe, were being educated in an environment that complied with Title IX. Principal Houghton is being sued in his individual and official capacity.

9. Defendant Michelle Halligan-Foley is the Director of the R.W. Croteau Technology Center ("Tech Center"), which is part of the Spaulding High School and at all relevant times, was employed by RSD and SAU #54. As the Director of the Tech Center, she had a duty to oversee, supervise, and facilitate the daily operations of its programs. She also owed a duty of reasonable supervision to all faculty and staff working in the Tech Center students, including Ms. Doe. Additionally, at all relevant times, had an obligation to take reasonable steps to ensure that all students attending programs in the Tech Center, were being educated in an environment that complied with Title IX. Director Halligan-Foley is being sued in her individual and official capacity.

10. Defendant Lisa Kumph is the teacher responsible for the health science technology program at the Tech Center, which is part of the Spaulding High School, and at all relevant times was employed by RSD and SAU #54. As the teacher responsible for the health science technology program, she had an obligation to take reasonable steps to ensure that all students attending the programs she taught were being education in an environment that complied with Title IX. Kumph is being sued in her individual and official capacity.

**III.   Jurisdiction and Venue**

11. This action is being brought under Title IX, 20 U.S.C. § 1681, et seq. (hereinafter "Title IX"), 42 U.S.C., § 1983, and state common law. Further, the Plaintiff is requesting reasonable attorney's fees pursuant to 28 U.S.C. §1988. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1343(a)(3), 1331 and 1367.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because the acts and omissions which give rise to this action occurred in this district and all Defendants reside in this district.

## IV. Facts

13. In February of 2017, Jane Doe, a seventh-grade student at Rochester Middle School, was sexually assaulted by two male students while attending a basketball game at her school.

14. The assaults happened in a bathroom at the end of the hall near the orchestra room.

15. Unlike most school bathrooms, these were single-stall spaces with doors that locked from the inside. The doors also could be locked from the outside to prevent anyone from entering without a key.

16. Upon information and belief, the only other bathrooms with locking doors in the Rochester Middle School were designated for use by faculty and staff only and were kept locked so as to be inaccessible to students.

17. Furthermore, this area of the school was readily accessible from the basketball gymnasium where the game was being played. This fact was known to Defendants.

18. It was also known to defendants that students would go to the orchestra room area during school activities.

19. Despite all of this, school personnel made no efforts to limit access to this area of the school and failed to supervise students congregating there.

20. Further, school personnel did not engage in any systematic monitoring of the area, including the single-stall, lockable restrooms.

21. At the time of the assaults, there was no need for the bathrooms near the orchestra room to be open and accessible to students. The locker rooms and other standard bathrooms without locks were available to meet the needs of students and guests who needed to use the facilities.

22. The two juveniles who perpetrated the assault did so by taking Jane Doe's cell phone and running down toward the orchestra room and into the bathroom.

23. When Ms. Doe attempted to get her phone back, the juveniles locked the door inside the bathroom and attacked her.

24. The State of New Hampshire filed delinquency petitions against the two juveniles.

25. The school district was joined as a party to the delinquency petitions pursuant to RSA 169-B:22.

26. The court entered findings of "true" to the delinquency petitions and the two juveniles were subject to court-imposed disposition.

27. As a party to the case, the Defendants were aware of the disposition of the case.

28. Within one week of the assault, Ms. Doe began seeing a mental health counselor to help her address the trauma she experienced. Ultimately Ms. Doe was diagnosed with post-traumatic stress disorder.

29. Defendants were fully aware of the fact that Ms. Doe was engaged in counseling to address the effects of the assault. In fact, RSD and/or SAU #54 paid for the counseling and continued to do so through Ms. Doe's graduation in 2022.

30. Despite struggling with the consequences of the sexual assault that occurred on the school premises during a school activity, Doe successfully progressed through her schooling.

31. During her eighth-grade year, Doe performed her classwork in the Tech Center at the high school, where she was supervised by Defendant Halligan-Foley. Halligan-Foley was aware of the assaults that caused Ms. Doe to take her classes at the Tech Center within Spaulding High School

32. This accommodation was made to make it possible for her to avoid contact with her assailants, but it had the effect of requiring her to take all of her classes online and in the same room. This had the effect of making Ms. Doe feel isolated at alone at times. isolating Ms. Doe, but she continued with her schooling.

33. At the beginning of Ms. Doe's junior year in high school, the 2020-2021 school year, she was accepted into the district's two-year health science technology ("HST") program.

34. Ms. Doe progressed through the program with relative success.

35. During the Spring of 2021, the participants in the HST program were required to perform a stethoscope exercise. To perform the exercise, students would place the instrument on the chest of a classmate and listen to the classmate's heartbeat.

36. The teacher, Lisa Kumph, assigned Doe to work with a male classmate–the only male student taking the course. When the male student reached out to touch Doe's chest, as required by the exercise, Ms. Doe experienced a PTSD response, recoiled, and ran into the bathroom where she began crying.

37. From the bathroom, Ms. Doe called her mother and explained to her what had just occurred.

38. Shortly thereafter, Ms. Doe's mother reached out to Mrs. Kumph to explain that Ms. Doe suffered from PTSD related to the 2017 assaults and that she was in counseling to address her condition.

39. In the following weeks, Ms. Kumph expressed her view to the effect that Ms. Doe should not enter the second year of the HST program because she was an inappropriate person to enter the health field. Ms. Kumpf explained that there would be times when patients would touch her in ways that might trigger a similar response and that therefore she was not a suitable candidate.

40. Ms. Kumpf also sought to justify her position by stating that if Ms. Doe was going to work in a nursing home, older men routinely engaged in inappropriate touching of female nurses and other staff members.

41. Ms. Halligan-Foley was aware the Kumph was excluding Ms. Doe from the second year of the program and thus being denied access to an educational program, but did nothing to rectify the harm done.

42. Indeed, Ms. Halligan-Foley attempted to direct Ms. Doe into an alternative program in Dover, but Ms. Doe wanted to attend the second year of the two-year HST program she had already started.

43. Ms. Doe and her parents objected to her remove from the HST program, and noted that Ms. Doe was *already* working in a nursing home after school and on weekends and was able to do so without experiencing any problems, but Kumpf refused to allow her to

continue into the second year of the HST program.  Halligan-Foley likewise did not insist that Doe be permitted to remain in the program.

44. The following year, Ms. Doe was not permitted to complete the second year of the two-year program.

45. At various times, the Defendants have stated that there were not enough places in the program for Ms. Doe.  However, Kumph and Halligan-Foley permitted a 10th grade student to participate in the program that was intended only for juniors and seniors.

**V.     Claims**

**Count I**
**Violation of Title IX**
**Against RSD and SAU #54**

46. The Plaintiff realleges the introductory paragraphs and paragraphs 1-41 above and incorporates them herein.

47. Title IX and its implementing regulations prohibit discrimination in educational programs operated by federally funded recipients on the basis of sex.

48. Under Title IX, a recipient is defined as any state or political subdivision, any instrumentality of a state or political subdivision, any public or private agency, institution, organization, entity or any person that received federal funds either directly or through another recipient, and that operates an education program or activity. 34 C.F.R. § 106.2(h).

49. When a school district or educational facility, which is federally funded, becomes aware of incidents of student-on-student sexual harassment and the student perpetrator is under its disciplinary policy, it is required to take action.

50. School Districts will be held liable for harm incurred from the hostile school environment if they act with deliberate indifference to the known harassment.

51. Within the context of Title IX, a student's claim of hostile environment can arise from a single incident. Additionally, evidence that a student's grades had dropped, that she had been diagnosed with depression or PTSD and that she had been admitted to the hospital as a result of the trauma associated with the assault has helped to satisfy the severity and pervasiveness requirements, when taken in conjunction with evidence of the actual sexual assault or harassment itself.

52. RSD and SAU #54 receive federal funds and therefore are recipients of federal funds under Title IX.

53. As a result, RSD and SAU #54 are required to comply with all aspects of Title IX.

54. As a result of the assault, Ms. Doe's grades dropped, she became depressed, became disinterested in school work, felt unsafe and uncomfortable and, her attendance suffered. The sexual harassment and sexual assault were sufficiently severe and pervasive that they created a sexually hostile environment and prevented Ms. Doe from accessing the educational opportunities provided by RSD and SAU #54.

55. As referenced above, RSD and SAU #54 had actual knowledge of the incidents because Ms. Doe reported them to school staff and because RSD and SAU #54 had been joined as parties in the juvenile matter.

56. Further, RSD and SAU #54 paid for counseling related to the assaults.

57. Ms. Doe and her parents also discussed Ms. Doe's treatment and difficulties with the Defendants.

58. Despite this, RSD and SAU #54 allowed the consequences of the sexual assaults to be used as a basis to deny Ms. Doe access to educational opportunities.

59. The Defendants' responses to the reported incidents of sexual assault and sexual harassment were clearly unreasonable in light of the circumstances and constituted deliberate indifference.

60. As a result of the Defendants' repeated failures to address the effects that the sexual harassment and sexual assault had on Ms. Doe, she was unjustly, and on a discriminatory basis, denied equal educational opportunities and benefits provided by RSD and SAU #54.

61. As a further result, Ms. Doe suffered and will continue to suffer from psychological harm, emotional harm, physical pain and suffering and floss of education opportunities for which they are liable.

## COUNT II
## 42 U.S.C. § 1983
## RSD and SAU #54

62. The Plaintiff realleges paragraphs 1-58 above and incorporates them herein.

63. Ms. Doe had a constitutional and statutory right to have equal access to public education, without regard to her sex, pursuant to 42 U.S.C. § 1983.

64. The Defendants, RSD and SAU #45, were state actors acting under of color of law.

65. The Defendants acted with the intent, as expressed by (a) their deliberate indifference to known acts of sexual assault and sexual harassment that Ms. Doe suffered; and (b) their failure to adequately train and supervise the Defendants, Superintendent Michael Roy, Superintendent Rapucci, Principal Adam Roy, and Principal Houghton, Halligan-Foley and Kumph, leading to a violation of these constitutionally and statutorily protected rights.

66. This deliberate indifference and lack of response to known acts of sexual assault and sexual harassment were the result of a custom, policy, and practice of RSD and SAU #54, which included penalizing victims of sexual assault and harassment by denying them educational opportunities.

67. As a result of the Defendants' conduct, Ms. Doe has suffered from and will continue to suffer from psychological harm, emotional harm and physical pain and suffering for which RSD and SAU #54 are liable.

**COUNT III**
**42 U.S.C. § 1983**
**Against Defendants Repucci, Hopkins, Roy,**
**Houghton, Gilpatrick, Kumph, and Halligan-Foley.**

68. The Plaintiff realleges the introductory paragraphs and paragraphs 1-63 above and incorporates them herein.

69. Ms. Doe had a constitutional and statutory right to have equal access to public education, without regard to her sex, pursuant to 42 U.S.C. § 1983.

70. The Defendants, Superintendents Repucci and Hopkins, Principals Roy, Houghton, and Gilpatrick, and Kumph and Halligan-Foley were all state actors acting under of color of law.

71. The Defendants acted with deliberate indifference to the safety of Ms. Doe prior to the assault and/or with deliberate indifference to her right to access academic programs, which was denied as a direct consequence of the assaults.

72. The Defendants acted with the intent, as expressed by their deliberate indifference to known acts of sexual assault and sexual harassment Ms. Doe suffered, to violate these constitutionally and statutorily protected rights.

13

73. As a result of the Defendants' conduct, Ms. Doe has suffered from and will continue to suffer from psychological harm, emotional harm, and physical pain and suffering for which they are liable.

74. The Defendants' conduct constituted reckless or callous indifference to the Plaintiff's federally protected rights and, as a result, Ms. Doe. is entitled to punitive damages.

**COUNT IV**
**State Law Negligence**
**Against All Defendants**

75. The Plaintiff realleges the introductory paragraphs 1-70 above and incorporates them herein.

76. All Defendants had a duty to exercise due care in providing Ms. Doe with an educational atmosphere free from sexual harassment and sexual violence.

77. The Defendants also had a duty to exercise due care and to reasonably supervise Ms. Doe and all students within their care.

78. This duty of care included an obligation to ensure that the building in which school activities occurred was properly designed and fitted-out for the purpose of housing middle school students.

79. This duty of care also included an obligation to exercise due care in supervising students and visitors in a manner that accounted for the physical plant of the school. This includes, but is not limited to, ensuring that school personnel accessed areas of the school that they knew students could access and where the risks to the safety of students were heightened, as was the case with the isolated and lockable bathrooms in which the Plaintiff was assaulted.

80. Defendants breached this duty of care by failing to take reasonable steps to ensure the safety and well-being of students and visitors.

81. The Defendants breached these duties by failing to take such actions that include, but are not limited to: (a) failing to ensure the building was reasonably designed and outfitted; (b) appropriately supervising students that were on campus for school functions; (c) restricting access to lockable restrooms during after-hours activities; and (d) limiting areas of the school that were accessible to students during after-hours school activities when faculty and staff were not at full strength.

82. As a direct and proximate result of the Defendants' breach of these duties, Ms. Doe has suffered and will continue to suffer from psychological harm, emotional harm and physical pain and suffering for which they are liable.

83. The injuries, damages and harm that Ms. Doe suffered were reasonably foreseeable to the Defendants.

84. The Defendants' actions constitute gross negligence in that they acted with reckless disregard and, as a result, Ms. Doe. is entitled to enhanced compensatory damages.

**COUNT V**
**Breach of Fiduciary Duty**
**All Defendants**

85. The Plaintiff realleges the introductory paragraphs and paragraphs 1-80 above and incorporates them herein.

86. All Defendants owed the Plaintiff a fiduciary duty to exercise due care in providing Ms. Doe with an educational atmosphere free from sexual harassment and sexual violence and to protect her from the assaults she experienced.

87. This fiduciary duty of care included an obligation to ensure that the building in which school activities occurred was properly designed and outfitted for the purpose of housing middle school students.

88. This duty of care also included an obligation to exercise due care in supervising students and visitors in a manner that accounted for the physical plant of the school. This includes, but is not limited to, ensuring that school personnel accessed areas of the school that they knew students could access and where the risks to the safety of students were heightened, such as the lockable bathrooms in which the Plaintiff was assaulted.

89. Defendants breached this duty of care by failing to take reasonable steps to ensure the safety and well-being of students and visitors.

90. The Defendants breached these duties by failing to take such actions that include, but are not limited to: (a) failing to ensure the building was reasonably designed and outfitted; (b) appropriately supervising students that were on campus for school functions; (c) restricting access to lockable restrooms during after-hours activities; and (d) limiting areas of the school that were accessible to students during after-hours school activities when faculty and staff were not at full strength.

91. As a direct and proximate result of the Defendants' breach of these duties, Ms. Doe has suffered and will continue to suffer from psychological harm, emotional harm and physical pain and suffering for which they are liable.

92. The injuries, damages and harm that Ms. Doe suffered were reasonably foreseeable to the Defendants.

93. The Defendants' actions constitute gross negligence in that they acted with reckless disregard and, as a result, Ms. Doe. is entitled to enhanced compensatory damages.

## VI. Attorneys' Fees

94. Pursuant to 28 U.S.C. §1988, the Plaintiff requests an award of reasonable attorney's fees.

## VI. Jury Demand

95. The Plaintiff demands a jury trial.

|  |  |
|---|---|
|  | Respectfully Submitted<br>Jane Doe<br>By er attorneys,<br>Lehmann Major List, PLLC |
| May 21, 2024 | */s/Richard J. Lehmann*<br>_____<br>Richard J. Lehmann (Bar No. 9339)<br>6 Garvins Falls Road<br>Concord, N.H. 03301<br>(603) 731-5435<br>rick@nhlawyer.com |